FILED
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK 2010 NOV 16 PM 4: 12

-------------------------------------------------------------------

KAYCEE JOHNSON,

U.S. DISTRICT COURT
EASTERN DISTRICT
OF NEW YORK

Plaintiff,

COMPLAINT · **5 2 9 2**

Jury Trial Demanded

-against-

THE CITY OF NEW YORK, POLICE OFFICER JOHN
DOE 1-3

AMON. J.

Defendants.

MANN. M.J.

------------------------------------------------------------------- x

## PRELIMINARY STATEMENT

1.        This is a civil rights action, brought pursuant to 42 U.S.C. § 1983, alleging

misconduct by the City of New York and two of its police officers.  Plaintiff alleges that, on June

12, 2009, Officers John Doe subjected plaintiff to false arrest, excessive force, an illegal strip

search and fabricated evidence in violation of the Fourth, Sixth and Fourteenth Amendments to

the Constitution and New York common law.    Plaintiff seeks compensatory and punitive

damages, declaratory relief, an award of costs and attorney's fees, and such other and further

relief as the court deems just and proper.

## JURISDICTION & VENUE

2.        This action is brought pursuant to 42 U.S.C. § 1983 and the Fourth, Sixth

and Fourteenth Amendments to the United States Constitution.    Jurisdiction is conferred upon

this Court by 28 U.S.C. §§ 1331 and 1343.

3.        Venue is proper in the Eastern District pursuant to 28 U.S.C. § 1391(b)

and (c) because defendant City of New York is subject to personal jurisdiction in this District.

Moreover, venue is proper here pursuant to 28 U.S.C. § 1391(b) because the incidents at issue in this lawsuit took place in New York, which is within the confines of the Eastern District.

## PARTIES

4.      Plaintiff is a resident of the State of New York.

5.      The City of New York is a municipal corporation organized under the laws of the State of New York.

6.      Police Officer John Does are members of the NYPD who was involved in the arrest of plaintiff, and the torts arising out of plaintiff's arrest, on June 12, 2009.   Does are liable for directly participating in the acts described herein and for failing to intervene to protect plaintiff from the illegal conduct of his fellow officers.   Does are sued in their individual and official capacity.

## STATEMENT OF FACTS

7.      On June 12, 2009, at approximately 11:55 a.m., plaintiff was exiting 511 Lincoln Place, Brooklyn, NY, when, without probable cause, he was stopped by Officers Doe. Upon questioning, plaintiff explained he was visiting his friend Tracey on the third floor and was on his way home.   Plaintiff provided the officers with identification.   The officers, without investigating plaintiff's explanation, placed plaintiff in unnecessarily tight handcuffs and brought him back to the precinct.

8.      The officers conspired to falsely arrest plaintiff for trespassing in a building operated by the New York City Housing Authority and other related charges.   Once back at the precinct, plaintiff was forced to remove his clothing, squat and cough.

2

9.     Plaintiff remained in custody at the precinct until the following evening, when he was taken to Brooklyn Central Booking for further arrest processing and to await arraignment.

10.    While plaintiff was confined in Central Booking, the officers conveyed false information to prosecutors in order to have plaintiff prosecuted.

11.    On June 14, 2010 at approximately 5:00 p.m. plaintiff was arraigned in Criminal Court, Kings County, on a misdemeanor charge of trespass.  At arraignment, plaintiff was released on his own recognizance.

12.    After numerous court appearances, all charges against plaintiff were dismissed.

13.    As a result of defendants' actions, plaintiff suffered pain and injury, emotional distress, mental anguish, fear, embarrassment, humiliation, discomfort, damage to reputation.

## PLAINTIFF'S FEDERAL CLAIMS AGAINST
## DEFENDANTS JOHN DOE

14.    Plaintiff repeats and realleges the allegations contained in ¶¶ 1-13 as if fully set forth herein.

15.    The conduct of defendants Officers John Doe, as described herein, amounted to false arrest, excessive force and fabrication of evidence in violation of  42 U.S.C. § 1983 and the Fourth, Sixth, and Fourteenth Amendments to the United States Constitution.

## PLAINTIFF'S  FEDERAL  CLAIM  AGAINST
## THE CITY OF NEW YORK

3

16.     Plaintiff repeats and realleges the allegations contained in ¶¶ 1-15 as if fully set forth herein.

17.     The City of New York directly caused the constitutional violations suffered by plaintiff.

18.     Upon information and belief, the City of New York, at all relevant times herein, was aware from notices of claim, lawsuits, complaints filed with the City, and from the City's own observations, that many of its police officers, including the individual defendants, are unfit officers who have the propensity to commit the acts alleged herein.  Nevertheless, the City of New York exercised deliberate indifference by failing to take remedial action.  The City failed to properly train, retrain, supervise, discipline, and monitor the officers and improperly retained and utilized them.  Moreover, upon information and belief, the City of New York failed to adequately investigate prior complaints filed against the officers.

19.     Moreover, The City of New York has implemented and continues to conduct, enforce and sanction an unlawful vertical patrol and trespass arrest policy which has resulted in a pattern and practice of illegal stops, seizures, questioning, searches, and false arrests of authorized visitors to NYCHA residences.

20.     The NYPD first implemented vertical patrols in 1991.  The protocol was adopted to address crime, and specifically drug activity, in NYCHA residences.  It is considered an "important component of the [NYPD]'s drug control strategy."    (NYPD Patrol Guide Procedure 212-59).

21.     In the course of a vertical patrol, multiple NYPD officers approach anyone they observe in the common areas of a building or to affirmatively establish a connection to a

4

specific building resident.  If an individual stopped and seized pursuant to a vertical patrol fails

to identify himself to the satisfaction of the officer, or is unable to demonstrate to the satisfaction

of the officer, that he or she is going to, or coming from, a visit to s resident or his or her own

home, he or she is arrested for trespass.  If the individual has not already been searched for

contraband pursuant to the seizure, they are subjected to a search for contraband pursuant to their

arrest.

22.    The NYPD's policy amounts to a roving pedestrian checkpoint wherein

NYPD officers indiscriminately stop, seize, question, and even search individuals in the common

areas of NYCHA residences in the absence of individualized objective facts.

23.    In 2005, the NYPD Housing Bureau alone conducted approximately

181,000 vertical patrols in NYCHA residences, and an average of 142,000 annually over the

previous six years.  *Testimony of Chief Joanne Jaffe, NYPD Housing Bureau*, New York City

Council Committee on Public Safety and Subcommittee on Public Housing (November 2, 2006)

at 24.   These figures underestimate the actual number of vertical patrols, however since NYPD

officers outside of the Housing Bureau also patrol NYCHA residences, also conduct vertical

patrols in NYCHA residences, and also arrest people for trespass in NYCHA residences.

24.    In addition to directed or organized vertical sweeps in NYCHA residences,

NYPD officers also sweep NYCHA residences for alleged trespassers on an informal basis.

25.    Trespassing in public housing is a Class B misdemeanor under subsection

(e) of NYPL Section 140.10, which was enacted in 1992, shortly after the inception of the

vertical program (L. 1992 ch. 434).

26. The number of trespass arrests in NYCHA residences has surged. The City has not provided any legitimate and neutral explanation for this rise in the arrest rate.

27. The NYPD Patrol guide on vertical patrol provides NYPD officers no guidance on who is to be stopped, seized, questioned, searched or arrested for trespass. It simply directs uniformed patrol officers to "take note of unauthorized persons remaining in lobbies, basements, staircases and   roof landings and take appropriate police action when necessary." (NYPD Patrol Guide 212-60). Yet the vertical patrol provision contains no criteria for determining who is - and who is not - an "unauthorized person."

28. The vertical patrol policy and trespass arrest practices implemented by NYPD officers fails to require that an arresting officer act upon observed behavior that reliable differentiates a suspected trespasser or "unauthorized person" in a NYCHA hallway from a lawful visitor in transit, or a building resident enjoying the common areas of his home. Given the large number of people legally permitted in a NYCHA residence, a police officer who is unfamiliar with the building residents and visitors cannot consistently or reliably differentiate between a suspected trespasser and a building resident enjoying the common areas of his home. Given the large number of people legally permitted in a NYCHA residence, a police officer who is unfamiliar with building residents and visitors cannot consistently or reliable differentiate between a suspected trespasser and a building resident, visitor, permittee, or licensee based on this policy.

29. Defendant's failure to provide adequate guidance, training, and support to NYPD officers regarding how to conduct vertical patrols, including whom to stop, question,

6

seize, search and arrest for trespass, results in a *de facto* roving checkpoint and a pattern and practice of unlawful stops and seizures.

30.     The only guiding principles provided to NYPD officers are consistent with, and reflective of, a policy, practice and custom of reckless arrests based on less than probable cause.

31.     Under this policy, as written, people are or can be arrested for trying to visit someone who is not at home based solely on their mere presence in or around a NYCHA residence. People are also arrested in instances in which they know only their friend's first name or "street" name, or only know the apartment by the location rather than the number. Individuals who remain silent upon questioning for trespass by NYPD officers are subject to arrest. this is even true if the only basis for the NYPD's questioning is the presence of that individual in a NYCHA common area.

32.     Defendant's vertical patrol policy and trespass arrest practices, even if diligently followed, cause a pattern and practice of false arrests of many people who are lawfully on the premises. Without probable cause to suspect criminal activity, the individual is forced to defeat a presumption of guilt with the presentation of documents or witnesses at the time of arrest.

33.     In addition to screening for suspected trespassers, another purported purpose of the vertical patrol program and trespass arrest practices is to screen and police NYCHA residents themselves. According to Inspector Michael C. Phipps, Commanding Officer, Housing Bureau Manhattan, the NYPD has the authority to arrest building residents and charge them with second degree trespass for entering certain areas of their own building, "namely, the

7

roof landings, the rooftops, the store rooms, maintenance areas and basements." Testimony of

Insp. Michael C. Phipps, New york City Council Committee on Public Housing (April 29, 2004)

at 24 (Phipps Testimony"). Inspector Phipps testified that "[w]hen tenants sign lease agreements

with the Housing Authority, they are advised not to enter" these areas in their buildings. *Id.*

34.  In fact, NYCHA leases do not contain any such clause.  A NYCHA lease

merely provides that, when given proper notice, tenants must comply with all lawful rules and

regulations promulgated by the Landlord.  For example, signs posted in or around lobbies of

NYCHA residences, if any, may state "No Trespassing" or "Loitering and trespassing in lobby,

roof, hallway and stairs is not permitted.  Violators are subject to arrest and prosecution by the

Police Department."

35.  Trespassing is an offense which requires  that a person unlawfully enter or

remain in a prohibited area.  There is no law prohibiting a resident's mere presence in or around

the stairwells, hallways, roofs, or roof landings in his or her own apartment building.  Indeed,

there could be no lawful regulation or notice provision prohibiting entirely a resident's mere

presence in his or her own hallway or stairwell.

36.  Loitering also requires a specified unlawful purpose for being present at a

location, such as "begging," P.L. section 240.35(1); gambling, P.L. section 240.35(2); sexual

conduct P.L. section 240.35(3); possessing a controlled substance, P.L. section 240.36 or

engaging in prostitution, P.L. section 240.37.

37.  Thus, there is no legal basis for wholesale stopping. seizing, questioning,

searching and arresting individuals for mere presence in lobbies, roofs,hallways, and stairwells in

8

and around NYCHA residences.   Yet defendant has enforced, promoted, encouraged and sanctioned these customs and practices.

38.    The City has failed to supervise and discipline NYPD officers who unlawfully stop, question, seize, search, and arrest individuals for trespass.  On information and belief, Defendant does not monitor improper stops, seizures, and searches for trespass.  Nor has the Defendant instituted any follow up procedure or disciplinary action when charges are dismissed or where it is otherwise established that an individual was arrestee without probable cause.

39.    The aforesaid conduct by the City of New York violated plaintiff's rights under 42 U.S.C. § 1983 and the Fourth, Sixth and Fourteenth Amendments to the United States Constitution.

WHEREFORE, plaintiff demands a jury trial and the following relief jointly and severally against the defendants:

a.    Compensatory damages in an amount to be determined by a jury;

b.    Punitive damages in an amount to be determined by a jury;

c.    Costs, interest and attorney's fees;

d.    Such other and further relief as this Court may deem just and proper, including injunctive and declaratory relief.

DATED:    November 2, 2010
New York, New York

9

Robert Marinelli
305 Broadway, 14th Floor
New York, New York 10007
(212) 822-1427


_____
ROBERT MARINELLI (RM-4242)


10